IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEVIN S. VOAGE,

               Petitioner,

        vs.

DANIEL PARAMO, Warden, Richard J.
Donovan Correctional Facility,

             Respondent.

No. 2:13-cv-01342-JKS

ORDER
[Re: Motion at Docket No. 60]
and
MEMORANDUM DECISION

      Kevin S. Voage, a California state prisoner proceeding *pro se*, filed a Petition for a Writ

of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Voage is in the custody of the

California Department of Corrections and Rehabilitation and incarcerated at the Richard J.

Donovan Correctional Facility. Respondent has answered, and Voage has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

      On April 18, 2011, Voage was charged with receiving stolen property in an information

that further alleged six enhancements due to Voage's prior felonies and prison terms. Prior to

trial, Voage moved *in limine* to exclude reference to his 10 prior convictions in the event he

chose to testify. The trial court granted Voage's motion in part, ruling that, if Voage chose to

testify, the prosecution could impeach him with 6 prior felony convictions involving moral

turpitude: 1) February 1, 2006, conviction for criminal threats; 2) February 1, 2006, conviction

for sexual battery; 3) May 8, 2000, conviction for using a minor in the sale of marijuana;

4) December 1994 conviction for nonviolent escape from jail; 5) November 15, 1993, conviction

for automobile theft; and 6) November 15, 1993, conviction for evading a police officer. On

direct appeal of his conviction, the California Court of Appeal recounted the following facts

underlying the case against Voage and the evidence presented at trial:

Kabriella Brandt lived in a two-bedroom house at 2241 West Capitol Avenue in Yolo County. Three cottages were located behind Brandt's house. In March 2011, [Voage] lived alone in one of the cottages (unit one), about 20 feet from Brandt's house.

For two to three weeks in March 2011, while Brandt was in the hospital and then at a skilled nursing facility, Brandt's long-time friend Bruce Stuart took care of Brandt's four-year-old granddaughter Anna and lived in Brandt's house. During that time, Stuart's job required him to leave town. Before he left, Stuart told [Voage] that Stuart would be out of town for 10 to 12 days. Stuart locked the doors, closed the windows to Brandt's house, and left town with Anna.

When Stuart returned, he noticed four or five individuals, including [Voage], standing outside unit one. The door to the laundry room of Brandt's house was unlocked and had fresh pry marks. The interior of Brandt's house was ransacked.

After walking through Brandt's house, Stuart went to unit one to speak with [Voage]. The people who Stuart saw with [Voage] had left. Stuart told [Voage] that Brandt's house had been burglarized and asked if [Voage] saw anything. [Voage] said he did not. Stuart called the police.

West Sacramento Community Service Officer Ryan Fong was dispatched to Brandt's house. Officer Fong testified that Stuart told him several individuals were standing in the driveway when Stuart arrived at the property, the individuals fled in different directions, and Stuart saw someone enter unit one but no one answered when Stuart knocked on the door to unit one.

While waiting outside Brandt's house for Officer Fong to complete his work, Stuart saw [Voage] come out of unit one with a clear plastic bag and leave the bag on top of a garbage can next to unit one. [Voage] then walked across West Capitol Avenue. Stuart recognized the shower curtain from Brandt's house in the plastic bag [Voage] left on the garbage can. At trial, Stuart and Brandt identified other items contained in the plastic bag as items taken from Brandt's house. Stuart reported what he saw to Officer Fong. Officer Fong requested assistance from police officers.

West Sacramento Police Officer Brian Schmidt responded to Officer Fong's call for assistance. According to Officer Schmidt, Stuart said he saw [Voage] place a clear plastic bag containing property taken from Brandt's house on a garbage can, and [Voage] told Stuart, "if this is your stuff, I have more of it." Stuart then pointed Officer Schmidt to where [Voage] had gone across West Capitol Avenue.

Officer Schmidt located [Voage] on West Capitol Avenue across from Brandt's house. Officer Schmidt asked [Voage] "what's going on?" [Voage] responded that he saw several individuals pulling property out of Brandt's house, putting the property on the driveway, and taking property across West Capitol Avenue to a trailer park. [Voage] could not tell Officer Schmidt when he saw the unknown individuals take property out of Brandt's house. But [Voage] told Officer Schmidt he had Brandt's entertainment center in his garage. [Voage] then voluntarily returned to unit one with Officer Schmidt,

unlocked his garage, and showed Officer Schmidt the entertainment center. Stuart identified the entertainment center as Brandt's.

[Voage] also let Officer Schmidt into unit one. Inside the unit, Stuart identified various items belonging to Brandt, including a stereo, two desk chairs, a desk lamp, a DVD player, and two bags containing prescription medication bottles bearing Brandt's name.

[Voage] was placed under arrest. After advising [Voage] of his *Miranda*[FN1] rights, Officer Schmidt asked [Voage] to identify the contents of the clear plastic bag that [Voage] had placed on the garbage can outside unit one. [Voage] admitted that the clear plastic bag contained a shower curtain and food items belonging to Brandt. [Voage] said he told Stuart, "if any of that stuff is yours, I have more of it."

FN1.   *Miranda v. Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694] (*Miranda*).

Police found many additional items in unit one that had been taken from Brandt's house. A clock from Brant's house was plugged in at unit one. Law enforcement officials also located, in a garbage can by unit one, various items identified as taken from Brandt's house, including a photograph of Anna and a computer keyboard.

Officer Fong collected six latent fingerprints from Brandt's house. [Voage] was excluded as a person who left the fingerprints.

[Voage] testified at trial. He said he saw, through the window of unit one, several people taking things from the driveway of Brandt's house to a location across the street. [Voage] told the people to leave. There was almost an entire houseful of things on the driveway. [Voage] did not return the items to Brandt's house because no one had been home for three weeks and he did not believe the property would be safe at Brandt's house. Instead he used two empty garbage cans to move the items into unit one and may have left some of the things in the garbage cans. He left a computer keyboard in the garbage can because there was a big crack in it. (A crime scene investigator subsequently testified that the computer keyboard found in [Voage's] garbage can was undamaged.) [Voage] testified that he plugged in the stereo and clock taken from Brandt's house to see if they worked because they were wet or damaged. He attached his speakers to Brandt's stereo to see if his speakers worked.

[Voage] testified that he thought the items belonged to Anna's mother, Laura Glover, and he intended to return them to her. He saw Stuart at the property later that day. [Voage] set a bag of things on a garbage can and told Stuart, "if this bag—the stuff in this bag is yours, I have the rest of it in my house." [Voage] tried to return the items to Stuart, but Stuart became very angry and agitated toward [Voage]. Because Stuart was becoming more and more upset when [Voage] tried to talk to him, [Voage] told Stuart to call the police and [Voage] walked across the street. [Voage] did not call the police because he had a number of prior felony convictions and did not trust the police. But when Officer Schmidt spoke with him, [Voage] told Officer Schmidt what he saw and what happened. [Voage] told Officer Schmidt he had property from Brandt's house and tried to return the property to Stuart, but Stuart became angry with [Voage].

*People v. Voage*, No. C069059, 2012 WL 5914032, at *1-3 (Cal. Ct. App. Nov. 27, 2012).

At the conclusion of trial, the jury convicted Voage of receiving stolen property. In a bifurcated proceeding, the trial court found true the allegations that Voage had been convicted of 2 or more serious and/or violent felonies and had served 5 prior prison terms. The court denied Voage's motion to dismiss the prior strike allegations and sentenced Voage to 25 years to life imprisonment under California's Three Strikes law,[1] plus a determinate term of 5 years' imprisonment for California Penal Law § 667.5(b) enhancements.

Through counsel, Voage appealed his conviction, arguing that: 1) the prosecution should not have been allowed to impeach him with 6 prior felony convictions; 2) the trial court abused its discretion in denying Voage's motion for mistrial based on the prosecution's failure to disclose new evidence; 3) the prosecutor committed misconduct during closing argument; 4) the trial court abused its discretion in refusing to dismiss the prior strike allegations; and 5) the life sentence for receiving stolen property constitutes cruel and unusual punishment. On November 27, 2012, the Court of Appeal issued a reasoned, unpublished opinion unanimously affirming the judgment against Voage. Voage petitioned for review in the California Supreme Court, which was summarily denied on February 13, 2013.

Voage then filed in the state courts a number of *pro se* habeas petitions that do not appear in the record before this Court. However, Respondent "admits that Petitioner has exhausted the claims presented in the amended petition for habeas corpus [(Docket No. 34 ("Petition"))]." Docket No. 47 ("Opposition") at 14. Briefing is now complete, and the case has been reassigned

---

[1] *See* CAL. PENAL CODE § 667(e)(2)(A)(ii) (mandating an indeterminate sentence of 25 years to life imprisonment for a defendant convicted of a felony when that defendant "has two or more prior felony convictions").

to the undersigned judge for adjudication.  Voage has also moved for an evidentiary hearing in this Court.  Docket No. 60.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Voage argues that: 1) the trial court committed misconduct by relying on inaccurate records during Voage's bifurcated trial on prior convictions and prison terms; 2) appellate counsel was ineffective for failing to raise the trial court's misconduct on direct appeal; 3) the trial court erred by imposing compensatory victim restitution in excess of the amounts due; 4) the prosecution should not have been allowed to impeach him with 6 prior felony convictions; 5) the trial court erred in denying his motion for a mistrial based on the prosecution's failure to timely disclose impeachment evidence; 6) the prosecutor committed misconduct during closing argument by misstating facts; 7) the trial court abused its discretion by refusing to dismiss pursuant to California state law his prior serious or violent convictions; and 8) his life sentence for receiving stolen property is cruel and unusual punishment.

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). A summary denial is an adjudication

on the merits and entitled to deference. *Harrington v. Richter*, 562 U.S. 86, 99 (2011). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.     Procedural Issues

Respondent urges the Court to dismiss Grounds 1 and 2 as not properly before the Court and procedurally defaulted, and Grounds 4 as procedurally defaulted. As previously noted, the record before this Court does not contain the majority of habeas petitions that Voage filed in the state courts. Accordingly, the Court is without ability to meaningful review those petitions and assess the procedural grounds upon which the state courts' decisions were made. Moreover, as discussed below, the allegedly-barred claims may be more easily resolved on the merits. Accordingly, the Court declines to decide those claims on procedural grounds and will address the merits of all Voage's claims, as discussed below. *See Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) (in the interest of judicial economy, the court may address a petition's merits without reaching procedural issues); *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1083 (9th Cir. 2001) (declining "to reach the complex questions lurking in the time bar of the AEDPA" where the district court "decided the case on the merits, and on the merits it was right as a matter of law").

B.      Merits

1.      *Defective sentencing proceedings/ineffective assistance of appellate counsel* (Grounds 1, 2); *sentencing errors/cruel and unusual punishment* (Grounds 3, 7, 8)

Voage first raises a number of claims related to his sentencing.  The constitutional guarantee of due process is fully applicable at sentencing.  *See Gardner v. Florida*, 430 U.S. 349, 358 (1977).  However, state law sentencing errors are not cognizable on federal habeas review. *See Miller v. Vasquez*, 868 F.2d 1116, 1118-19 (9th Cir. 1989).  Moreover, as the Ninth Circuit has explained, a petitioner's contention that a state trial court improperly exercised its discretion under state sentencing law generally does not allege any cognizable claim for federal habeas relief.  *See Brown v. Mayle*, 283 F.3d 1019, 1040 (9th Cir. 2002), *vacated on other grounds*, 538 U.S. 901 (2003), remanded to 66 F. App'x 136 (9th Cir. 2003).  Nevertheless, a federal court may vacate a state sentence imposed in violation of due process, for example, if a state trial judge enhanced a sentence based on materially false or unreliable information or based on a conviction infected by constitutional error.  *See  Townsend v. Burke*, 334 U.S. 736, 741 (1948); *United States v. Hanna*, 49 F.3d 572, 577 (9th Cir. 1995); *Walker v. Endell*, 850 F.2d 470, 477 (9th Cir. 1987).

i.      Defective sentencing proceedings/ineffective assistance of appellate counsel

Voage argues that the trial court committed misconduct during his bifurcated trial on prior convictions and prior prison terms by relying on inaccurate records and that appellate counsel was ineffective for failing to raise the issue on appeal.  According to Voage, the trial court altered evidence brought at his trial on the prior convictions, and the prosecution's burden of proof was thereby lowered in violation of due process rights.

The record indicates that Voage was originally charged with 3 prior serious or violent felony convictions within the meaning of California's Three Strikes law. The initial information listed the convictions as: terrorist threats (February 1, 2006); attempted murder (April 2, 1982); and robbery (April 2, 1982). At the trial on his prior convictions, the prosecution offered as an exhibit a certified criminal history report. The prosecutor noted that the documentation showed that the actual conviction date for the terrorist threats conviction was January 4, 2006. Similarly, the prosecutor observed that the actual conviction date for the attempted murder and robbery convictions was March 5, 1982. Without objection from defense counsel, the prosecutor asked the court to amend the charging document to conform to the proof presented.

To establish a due process violation based on false information, however, the false information must be "*material*." *Jones v. United States*, 783 F.2d 1477, 1480 (9th Cir. 1986) (emphasis in original) (quoting *Townsend*, 334 U.S. at 741). The record here shows that the information inaccurately listed the dates of conviction, which were off by about a month, and that Voage did not otherwise contest the veracity of the convictions. The discrepancy was therefore not material, and Voage cannot establish that the prior conviction information was materially false. *Cf. United States v. King*, 127 F.3d 483, 189 (holding that district court should have allowed the government to amend its original information to list correct date of defendant's prior conviction in Virginia state court under 21 U.S.C. § 851's clerical mistake provision). And because the discrepancy was not material, Voage does not allege facts that would establish a violation of the Sixth Amendment right to be clearly informed of the nature and cause of the charges against him. *See Calderon v. Prunty*, 59 F.3d 1005, 1009 (9th Cir. 1995) (reversing grant of habeas relief where petitioner where information was written with "sufficient clarity to

apprise a defendant of what to defend against"); *see also* U.S. CONST. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation . . . .").

Moreover, it is well-settled California law that a trial court does not abuse its discretion by permitting amendment of an information to correct minor errors such as typographical errors, where the amendment does not change the nature of the charges. *People v. McQuiston*, 70 Cal. Rptr. 531, 536 (Cal. Ct. App. 1968); *see also* CAL. PENAL CODE § 1009. Because Voage would not have prevailed on any challenge to the amendment of the information or to the trial court's reliance on it, counsel cannot be deemed ineffective for failing to raise the issue on direct appeal. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (internal citation omitted)); *Miller v. Keeney*, 882 F.2d 1428, 1434–35 (9th Cir. 1989) (appellate counsel's failure to raise a weak issue does not constitute ineffective counsel). Accordingly, Voage is not entitled to relief on either of these grounds.

        ii.    Improper restitution

Voage also argues that "[t]o impose compensatory victim restitution in excess of amounts due, is abuse of discretion" in violation of the Constitution. However, a petition for a writ of habeas corpus can be entertained only on the ground that the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Ninth Circuit has held that "§ 2254(a) does not confer jurisdiction over a habeas corpus petition raising an in-custody challenge to a restitution order." *Bailey v. Hill*, 599 F.3d 976, 984 (9th Cir. 2010)

(footnote omitted). "[T]he remedy that [Petitioner] seeks, the elimination or alteration of a money judgment, does not directly impact—and is not directed at the source of the restraint on—his liberty." *Id*. at 981. A federal court, then, lacks jurisdiction to hear claims that challenge the money portion of a state judgment, such as a restitution order, which does not affect the duration of custody. *Id.*

Moreover, Voage's claim that the restitution order was unauthorized by California law is a state-law claim which is beyond the purview of this Court in a federal habeas proceeding. *Swarthout*, 131 S. Ct. at 863; *see also Bell v. Cone*, 543 U.S. 447, 455 (2005). Further, the state court's rejection of his claim is an interpretation of state law that is binding on this court in consideration of the habeas petition. *Estelle*, 502 U.S. at 67-68. Because it has been determined that the restitution amounts were allowed under state law, there was no order in excess of that allowed by state law and no federal due process violation. *See Walker v. Endell*, 850 F.2d 470, 476 (9th Cir.1987). Voage's challenge to the restitution order therefore must fail.

### iii. Failure to dismiss a prior conviction

Voage additionally contends that the trial court abused its discretion in refusing to dismiss three of his prior strike convictions at sentencing. Under California Penal Law § 1385, a California court may dismiss a defendant's "strike" conviction for purposes of sentencing under the state's Three Strikes law;[2] a motion for such dismissal is referred to as a "*Romero*" motion based on the state supreme court's decision in that case. *People v. Superior Court (Romero)*, 917 P.2d 628, 632 (Cal. 1996).

---

[2]    *See* CAL. PENAL CODE §§ 667(a)(1) & (b)-(I), 1170.12(a)-(d).

The thrust of this claim is that the trial court erroneously failed to exercise its discretion to strike one of his prior serious felony convictions when imposing his sentence. Such claim, however, presents only a state law sentencing error that is not cognizable on federal habeas review. *See Souch v. Schiavo*, 289 F.3d 616 (9th Cir.2002) (claim challenging state court's discretionary decision concerning application of state sentencing law presented only state law issues and thus was not cognizable in a proceeding pursuant to 28 U.S.C. § 2254); *see also Swarthout*, 131 S. Ct. at 863; *Estelle*, 502 U.S. at 67-68. Although the Ninth Circuit has suggested that an abuse of discretion may also amount to a constitutional violation, *see Schell v. Witek*, 218 F.3d 1017, 1025 (9th Cir. 2000) (en banc), the Supreme Court has never held that abuse of discretion is an appropriate basis for granting federal habeas relief.[3] Indeed, quite to the contrary, the Supreme Court has strongly suggested that, while abuse of discretion is an appropriate standard on direct review, in a federal habeas proceeding it is not. *Renico v. Lett*, 559 U.S. 766, 772-73 (2010) ("It is not even whether it was an abuse of discretion for her to have done so–the applicable standard on direct review. The question under AEDPA is instead whether the determination of the Michigan Supreme Court that there was no abuse of discretion was "an unreasonable application of . . . clearly established Federal law."" (quoting § 2254(d)(1))).

---

[3]     At one time, the Ninth Circuit viewed a state court ruling to be "objectively unreasonable" if it amounted to a clear error. *Van Tran v. Lindsey*, 212 F.3d 1143, 1152-54 (9th Cir. 2000). This is the test the Ninth Circuit uses in reviewing a trial court decision under the abuse of discretion standard. *United States v. Ressam*, 679 F.3d 1069, 1086 (9th Cir. 2012) (en banc). The Supreme Court noted *Van Tran's* statement of the test and expressly rejected it as inappropriate under the AEDPA. *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003) (clear error standard is insufficiently deferential to state courts).

Even assuming that Voage is correct that the trial court misapplied California law when denying his motion, absent a showing of fundamental unfairness, a state court's misapplication of its own sentencing law does not warrant habeas relief. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *see also Miller v. Vasquez*, 868 F.2d 1116 (9th Cir. 1989) (declining to examine state court's determination that habeas petitioner's prior conviction was for a "serious felony" under state sentencing regime). Federal courts are "bound by a state court's construction of its own penal statutes," *Aponte v. Gomez*, 993 F.2d 705, 707 (9th Cir. 1993), and this Court therefore must defer to the California courts' application of the state's three strikes law unless that interpretation is "untenable or amounts to a subterfuge to avoid federal habeas review of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d 1395, 1399 (9th Cir. 1989). Voage does not allege that the state court's application of the Three Strikes law was either untenable or done to avoid federal review of his sentence. Nor has he shown that the trial court's *Romero* decision was arbitrary, capricious, or fundamentally unfair in violation of federal due process. *See Christian*, 41 F.3d at 469. As the Court of Appeal explained:

> In this case, [Voage] made a motion under section 1385 to dismiss allegations of his prior strikes: convictions for attempted murder, robbery and criminal threats. In ruling on [Voage's] motion, the trial court considered, among other things, the probation report which discussed [Voage's] relationships and his history of employment, drug use, crime, education and vocational training. The trial court also considered the factors set forth in *Williams*, *supra*, 17 Cal.4th at page 161. The trial court denied [Voage's] motion, concluding that [Voage] did not fall outside the spirit of the three strikes law. In particular, the trial court found that [Voage] was a career criminal with "significant and disturbing" prior strikes; he violated the trust of his neighbor; the current offense demonstrated an inability to live in civilized society without continued criminality; and although he might have prospects for the future because of his participation in programs to address his addiction, [Voage] still presented a danger to society.
>
> On this record, the trial court exercised its discretion under section 1385 and the record supports the trial court's decision.

*Voage*, 2012 WL 5914032, at *10.

13

The Court of Appeal's determination was both reasonable and fully supported by the record. Voage is not entitled to relief on this claim.

      iv.     Cruel and unusual punishment

Voage further asserts that his sentence is cruel and unusual. The Eighth Amendment, applicable to the States through the Fourteenth Amendment, proscribes the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII; *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). The Supreme Court has held that "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (citation omitted). In determining whether to infer gross disproportionality, a federal court should examine whether a petitioner's sentence is justified by the gravity of his triggering offense and his criminal history, a process similar to the three-pronged approach employed by California state courts. *See Ramirez v. Castro*, 365 F.3d 755, 768 (9th Cir. 2004).

Here, the California Supreme Court upheld Voage's sentence of 25 years to life imprisonment where he was convicted of receiving stolen property and was also a repeat offender. Voage cannot demonstrate that his is one of the exceedingly rare cases in which the sentence imposed raises an inference of gross disproportionality when compared to the crime committed. *See, e.g.*, *Ewing v. California*, 538 U.S. 11, 29-30 (2003) (sentence of 25 years to life for grand theft of $1,200 of golf clubs was not cruel and unusual); *Lockyer*, 538 U.S. at 77 (two consecutive sentences of 25 years to life for petty theft was not cruel and unusual). The California Supreme Court's affirmance of Voage's sentence was therefore not "contrary to, or . .

. an unreasonable application of," the gross disproportionality principle, the contours of which are unclear. *Lockyer*, 538 U.S. at 72-73.

Although Voage's sentence is admittedly harsh, California's decision to subject him to an enhanced sentence as a recidivist under its Three Strikes Law "reflect[ed] a rational legislative judgment, entitled to deference, that offenders who have committed serious or violent felonies and who continue to commit felonies must be incapacitated." *Ewing*, 538 U.S. at 30. As the Court of Appeal noted, "[V]oage's current felony conviction follows a long history of criminal conduct dating back to when he was 20 years old. The record does not show that [his] criminal activity was abating with age." *Voage*, 2012 WL 5914032, at *11. Consequently, "[Voage's] sentence of 25 years to life in prison is not unconstitutionally cruel and unusual given his current felony conviction, his three prior strikes, and his 29-year history of criminal conduct." *Id.* at *15. Voage is not entitled to relief on this claim.

   2.   *Evidentiary error–impeachment on prior convictions* (Ground 4)

Voage next argues that the trial court erred in its preliminary ruling permitting him to be impeached with four prior felony convictions. On direct appeal, the Court of Appeal considered and rejected that claim as follows:

> Prior to trial, [Voage] made a motion in limine to exclude reference to his prior convictions if he chose to testify. [Voage] had 10 prior felony convictions. The trial court granted [Voage's] motion in part, ruling that if [Voage] chose to testify, the prosecution could impeach him with six prior felony convictions involving moral turpitude: a February 1, 2006 conviction for criminal threats (§ 422), a February 1, 2006 conviction for sexual battery (§ 243.4, subd. (a)), a May 8, 2000 conviction for using a minor in the sale of marijuana (Health & Saf.Code, § 11361, subd. (a)), a December 1994 conviction for nonviolent escape from jail (§ 4532, subd. (b)), a November 15, 1993 conviction for automobile theft (Veh.Code, § 10851, subd. (a)), and a November 15, 1993 conviction for evading a peace officer (Veh.Code, § 2800.2). In so ruling, the trial court considered [Voage's] proposal to exclude felony convictions that occurred before 2001. It also considered whether [Voage] led a crime-free life after 2001 and whether the

priors were so cumulative that the jury would decide the case based solely on [Voage's] criminal history.

[Voage] contends that even if his 2006 convictions for criminal threats and sexual battery were properly admitted,[FN3] the trial court nonetheless abused its discretion in permitting impeachment evidence of his prior convictions for using a minor in the sale of marijuana, automobile theft, evading a peace officer, and nonviolent escape from jail. We disagree.

> FN3.   At trial, [Voage] conceded that the crimes of criminal threats and sexual battery involve moral turpitude.

Article I, section 28, subdivision (f) of the California Constitution authorizes the use for impeachment of any prior felony conviction which necessarily involves moral turpitude, even if the immoral trait is one other than dishonesty, subject to the trial court's discretion under Evidence Code section 352. A witness's prior felony conviction is admissible for impeachment if the least adjudicated elements of that felony offense necessarily involve moral turpitude. "Moral turpitude" has been defined as a "'readiness to do evil,'" "moral depravity" and "moral laxity." The rationale for felony impeachment is that a felony conviction which may be supposed to show a general readiness to do evil supports an inference of a readiness to lie.

In determining whether to admit a prior felony conviction for impeachment, a trial court should consider the four factors described in *People v. Beagle* (1972) 6 Cal.3d 441, 453 (*Beagle*). The *Beagle* factors include (1) whether the prior conviction reflects adversely on the witness's honesty or veracity; (2) the nearness or remoteness in time of the prior conviction; (3) whether the prior conviction is for the same or substantially similar conduct to the charged offense; and (4) what the effect will be if the witness does not testify out of fear of being prejudiced because of impeachment by prior convictions.

A trial court's exercise of discretion to admit a prior conviction for impeachment will not be disturbed unless it exceeds the bounds of reason, all of the circumstances being considered.

A

[Voage] contends the trial court erred in admitting his May 8, 2000 conviction for using a minor in the sale of marijuana (Health & Saf.Code, § 11361, subd. (a)). He contends this is so because the crime of possession of a controlled substance does not necessarily evince moral turpitude.[FN4] But [Voage] was convicted of using a minor in the sale of marijuana, not mere possession. [Voage] does not point to anything in the record to contradict this fact.

> FN4.   Of relevance here, the elements for a violation of Health and Safety Code section 11361, subdivision (a) include: (1) defendant hired, employed or used (2) a person under 18 years of age (3) to unlawfully transport, carry, sell, give away, prepare for sale or peddle marijuana, (4) at the time

16

defendant was 18 years of age or older, and (5) defendant knew of the nature or character of the substance involved as a controlled substance.

[Voage] also asserts that a violation of Health and Safety Code section 11361, subdivision (a) does not necessarily involve moral turpitude merely because it involves a child. This contention is forfeited because defendant did not raise it below. In any event, regardless of the involvement of a minor, a violation of Health and Safety Code section 11361, subdivision (a) involves moral turpitude because it shows an intent to corrupt others.

[Voage] further argues that evidence of his conviction for violating Health and Safety Code section 11361, subdivision (a) is unduly prejudicial because it involves a minor and invites speculation about his character. But the *Beagle* factors establish that the trial court did not abuse its discretion in admitting evidence of this conviction. A violation of Health and Safety Code section 11361, subdivision (a) is prima facie admissible because, as we explained, it involves moral turpitude. Any moral turpitude "has some 'tendency in reason' [citation] to shake one's confidence in [the witness's] honesty." While the prior conviction for using a minor in the sale of marijuana occurred 11 years before the trial for the current offense, the prior conviction was not for the same or substantially similar conduct as the instant offense for receipt of stolen property. Moreover, evidence concerning the prior conviction did not take up undue time at trial, and the facts underlying the prior felony conviction were not presented to the jury. In addition, the trial court's ruling to admit the prior did not deter defendant from testifying at trial. These factors indicate that the trial court did not abuse its discretion in admitting the prior conviction for using a minor in the sale of marijuana.

B

[Voage] admits there is authority that his December 1994 conviction for nonviolent escape from jail (§ 4532, subd. (b)) was a crime involving moral turpitude. [Voage] is correct.

Nonetheless, [Voage] contends the trial court abused its discretion in admitting the prior conviction for impeachment because "[t]he motivation for escape is not necessarily related to a lack of credibility." Again, however, [Voage] did not preserve this contention for appeal because it was not raised below.

In his reply brief, [Voage] attempts to distinguish *People v. Lang*, *supra*, 49 Cal.3d 991 by speculating that his conviction for nonviolent escape may not have involved a risk of injury. He states, "[f]or all we know, [Voage] may have surrendered himself before he was even known to be missing." But in determining whether a felony necessarily involves moral turpitude, a trial court looks to the least adjudicated elements of the offense and does not go behind the fact of the conviction and receive evidence on the underlying facts to determine whether the offense evinces moral turpitude. Based on its elements, the crime of nonviolent escape is a crime of moral turpitude.

C

Regarding his November 15, 1993 conviction for automobile theft, [Voage] claims the prior conviction should have been excluded under Evidence Code section 352 because it involved conduct similar to the conduct charged in the present case and thus had a greater prejudicial effect. [Voage] forfeited this claim because he did not raise the argument below and does not cite authority supporting the contention that section 496, subdivision (a) and Vehicle Code section 10851, subdivision (a) involve similar conduct.

[Voage] contention lacks merit in any event. He was convicted of automobile theft in 1993 but he was not charged with nor convicted of theft in the present case. The current felony conviction is for receipt of stolen property. Moreover, the similarity between the impeaching offense and the current offense is just one factor for the trial court to consider in exercising its discretion, and the admission of a conviction for a similar offense is not necessarily an abuse of discretion.

D

[Voage] next urges that his November 15, 1993 conviction for evading a peace officer (Veh.Code, § 2800.2) was improperly admitted because it was not clear from the record that the officer's safety was actually endangered. This argument is also forfeited for failure to raise it below. And it also fails on the merits because the offense of evading a peace officer is a crime involving moral turpitude. In deciding whether [Voage's] 1993 conviction was admissible for impeachment the trial court was not required to determine whether the peace officer's safety was actually endangered in the particular case leading to [Voage] 1993 conviction.

E

[Voage] further asserts that his 2000, 1994 and 1993 convictions should have been excluded because they are remote. But in determining whether a prior conviction should be excluded based on remoteness, a trial court may consider [Voage] conduct subsequent to the prior conviction and his age at the time of the later offense.

Here, [Voage] persisted in committing crimes after his felony conviction in 2000. His repeated unlawful conduct, following prior convictions and incarceration, was relevant to his " 'readiness to do evil' " and, hence, his credibility.

In addition, [Voage] was in his 30s when he was convicted of the prior offenses and there is no basis for concluding that he was a minor when he committed those offenses.

On this record, the trial court did not abuse its discretion in admitting [Voage's] prior felony convictions for impeachment.

*Voage*, 2012 WL 5914032, at *3-6 (citations omitted).

Voage fares no better on federal habeas review.[4]  First, to the extent that he argues that the admission of his prior convictions violated state law, Voage is not entitled to habeas relief. *See Wilson v. Corcoran*, 562 U.S. 1, 4 (2010) ("[I]t is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts."); *Estelle*, 502 U.S. at 67-68.

Moreover, Voage cannot show that the trial court's ruling violated his constitutional rights.  "'The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.'"  *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (quoting *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995)); *see also Jammal v. Van de Kamp*, 926 F.2d 918, 919 (9th Cir.1991) (proper analysis on federal habeas review is "whether the admission of the evidence so fatally infected the proceedings as to render them fundamentally unfair").  "The Supreme Court has made very few rulings regarding the admission of evidence as a violation of due process."  *Holley*, 568 F.3d at 1101.  "Although the Court has been clear that a writ should issue when constitutional errors have rendered the trial fundamentally unfair [citation], it has not yet made a clear ruling that admission of irrelevant or overly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ."  *Id.*

---

[4]      Because Voage testified at trial and was impeached with his prior convictions, his challenge to the court's ruling on that issue is cognizable on federal habeas review.  *See Luce v. United States*, 469 U.S. 38, 48 (1984) (holding that, in order to present an objection to a trial court's ruling that a prior conviction could be admitted, a defendant must actually testify at trial); *Galindo v. Ylst*, 971 F.2d 1427, 1429 (9th Cir. 1992) (per curium) (applying *Luce* in the context of a habeas petition).

Similarly, to the extent Voage argues that the prior convictions inflamed the jury by suggesting Voage's propensity to commit the present crime, the United States Supreme Court has never held clearly that the introduction of propensity evidence violates due process. *See Estelle*, 502 U.S. at 75 n. 5 ("we express no opinion on whether a state law would violate the Due Process Clause if it permitted the use of 'prior crimes' evidence to show propensity to commit a charged crime"); *Mejia v. Garcia*, 534 F.3d 1036, 1046 (9th Cir. 2008) (rejecting habeas petitioner's challenge to propensity evidence, where petitioner could point to no Supreme Court precedent establishing that admission of otherwise relevant propensity evidence violated the Constitution).

In the absence of clearly established Supreme Court law on this issue, AEDPA relief is foreclosed. *See Knowles v. Mirzayance*, 556 U.S. 111, 121 (2009) ("it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court") (citations and internal quotations omitted); *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("Because our cases give no clear answer to the question presented, . . . it cannot be said that the state court unreasonably applied clearly established Federal law") (citation, internal brackets and quotations omitted). Because the Court of Appeal's rejection of this claim was not contrary to, or an unreasonable application of, any clearly established Federal law as determined by the United States Supreme Court, Voage's challenge to the admission of his prior convictions must fail.

3.     *Denial of mistrial motion* (Ground 5)

Voage next asserts that the trial court erred by denying his motion for a mistrial based on

the prosecution's failure to timely disclose new evidence.  The Court of Appeal laid out the

following facts underlying this claim:

> On the first day of trial, the prosecutor met with Stuart before Stuart testified.
> During the meeting, Stuart said that in March 2011 he gave [Voage] notice that Stuart
> was leaving town.  He also told the prosecutor that he spoke to [Voage] before Officer
> Fong arrived at Brandt's house and [Voage] denied knowing anything about the burglary.
> In addition, Stuart denied the reference in Officer Schmidt's report that [Voage] told
> Stuart, "if any of this stuff is yours, I have more of it."  The prosecutor did not disclose to
> [Voage] the new statements made by Stuart at the meeting, even though they were
> inconsistent with, or not included in, the police reports.
>
> The prosecutor called Stuart as a witness the next day (the second day of trial).
> Stuart testified that when he left town, he told [Voage] he would be out of town for 10 to
> 12 days.  Stuart further testified that when he returned to Brandt's house and saw it had
> been burglarized, he spoke to [Voage], asked if [Voage] had seen anything, and [Voage]
> responded "no."  Stuart testified that [Voage] did not tell him there was more of Brandt's
> property in unit one.
>
> Continuing his testimony, Stuart reviewed Officer Fong's report and said the
> report did not contain all of the statements he made to Officer Fong on March 30, 2011.
> In particular, according to Stuart, Officer Fong's report failed to state that Stuart spoke
> with [Voage] before Officer Fong's arrival.
>
> Stuart also denied the statement in Officer Schmidt's report that [Voage] told
> Stuart, "if any of this stuff is yours, I have more of it."
>
> During cross-examination of Stuart, defense counsel elicited that Stuart had
> mentioned these new facts to the prosecutor the previous day.
>
> [Voage] moved for a mistrial as a sanction for the prosecution's failure to disclose
> Stuart's statements that (1) Stuart gave [Voage] notice that Stuart was leaving town,
> (2) Stuart spoke to [Voage] before Officer Fong arrived at Brandt's house and [Voage]
> denied knowing anything about the burglary, and (3) Stuart did not tell Officer Schmidt
> that [Voage] said, "if any of this stuff is yours, you can have it."  The prosecutor admitted
> she learned this new information from Stuart on the first day of trial.  The prosecutor said
> she did not disclose the information to defense counsel because the information was not
> exculpatory.
>
> The trial court ruled that the prosecutor should have disclosed Stuart's statements
> to [Voage], but it denied [Voage's] motion for mistrial.  Instead, the trial court said it
> would instruct the jury with a modified version of CALCRIM No. 306 [untimely
> disclosure of evidence] and would permit [Voage] to recall Stuart or Officer Fong for
> further questioning if he wished.

Defendant recalled Officer Fong, who testified that Stuart did not say he spoke with [Voage] before Officer Fong arrived at Brandt's house.

At the close of the evidence, the trial court instructed the jury as follows: "Both the People and the defense must disclose their evidence to the other side before trial within the time limits set by law. Failure to follow this rule may deny the other side the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial. [¶] An attorney for the People failed to disclose to defense that she had a conversation with witness Bruce Stuart just prior to her opening statement where he told her certain things which could be considered to be inconsistent with or not included in the reports of police department witnesses. [¶] In evaluating the weight and significance of that evidence, you may consider the effect, if any, of that late disclosure."

During closing argument, the prosecutor acknowledged that she erred in not disclosing Stuart's statements to the defense. She argued, however, that the error did not change the fact that [Voage] received stolen property. Defense counsel also directed the jury's attention to the prosecutor's failure to disclose, and told the jury it must decide whether Stuart was truthful in his testimony. Defense counsel pointed out that Stuart's testimony contradicted the testimony of Officer Fong and Officer Schmidt in certain respects.

*Voage*, 2012 WL 5914032, at *6-7.

*Brady v. Maryland*, 373 U.S. 83 (1962), and its progeny require the prosecution to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed. *Id.* at 281. That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Here, Voage fails to demonstrate materiality, i.e., that there is a reasonable probability that, had Stuart's new statements been disclosed to the defense earlier in the proceedings, the overall result would have been different. As the Court of Appeal explained:

> [Voage] . . . asserts, in a cursory fashion, that he would have altered his defense strategy if the prosecution had disclosed Stuart's statements earlier. He claims the delay in disclosure limited his ability to develop the theme that Stuart hated him. But such bare assertions are insufficient to meet [Voage's] burden on appeal.
>
> Contrary to [Voage's] claim that he was unable to develop his theme of Stuart's animosity and lack of credibility, [Voage] testified that Stuart generally did not talk to [Voage], Stuart was very hostile when [Voage] tried to return Brandt's belongings, and Stuart was a liar. There was also evidence that Stuart was very angry with [Voage] on March 30. Further, defense counsel told the jury it should disregard Stuart's testimony, calling it "the testimony of an angry man" and stating that Stuart was exaggerating, biased or had a motive to "do his utmost" to help convict [Voage]. Defense counsel pointed out that the testimony of Officer Fong and Officer Schmidt contradicted Stuart's testimony about his conversations with [Voage], and that Stuart's claim that Officer Fong and Officer Schmidt's reports were wrong was incredible.

*Voage*, 2012 WL 5914032, at *8 (citations omitted).

Voage's assertions of materiality and prejudice are based upon speculation as to how his defense would have been impacted if Stuart's statements had been disclosed earlier. But this Court "cannot consider conjecture" about what evidence "might have shown" in deciding a *Brady* claim. *See Crawford v. Head*, 311 F.3d 1288, 1329 (11th Cir. 2002); *see also Cooper v. Brown*, 510 F.3d 870, 925 (9th Cir. 2007) ("The mere possibility that undisclosed information might have helped the defense, or might have affected the outcome of the trial, is insufficient to establish materiality in the constitutional sense."). Further, this is not a case where the challenged evidence was never disclosed to the defense; although delayed, the disclosure occurred in adequate time for the defense to use the evidence at trial, particularly given the court's instructions. *See United States v. Davenport*, 753 F.2d 1460, 1462 (9th Cir.1985) (holding a delayed disclosure does not violate due process under Brady if the nature of the violation is disclosed at a time when it would still be of value to the accused). As the Court of Appeal noted:

> [T]he trial court informed the jury of the late-discovered evidence, permitted [Voage] to recall witnesses, and allowed both sides to argue the issue to the jury. The jury received evidence that contradicted Stuart's trial testimony and evidence that [Voage] tried to return Brandt's property. At the close of evidence, the trial court instructed the jury on how to view the new evidence. Under these circumstances, we cannot conclude that the prosecution's failure to disclose Stuart's statements to [Voage] resulted in prejudice.

*Voage*, 2012 WL 5914032, at *8.

This conclusion is both reasonable and fully supported by the record. Consequently, Voage is not entitled to relief on this ground.

4.    *Prosecutorial misconduct* (Ground 6)

Finally, Voage argues that the prosecutor committed misconduct by misstating facts during closing argument. The Court of Appeal described the background of this claim as follows:

> During her closing argument, the prosecutor argued that [Voage's] asserted intent to return the property taken from Brandt's house was unbelievable in part because [Voage] did not inform the police of that intent. The prosecutor argued, "[t]he defense wants you to believe that [Voage's] testimony was consistent with what he told the officers. Perhaps consistent with one very important exception. [Voage] never told the officers anything about Laura Glover, never, not until—we never heard about Laura Glover until three months later in this courtroom . . . ." Defense counsel objected to the prosecutor's statement on the grounds of "[m]isstatement of the facts." The trial court responded that the jury was best equipped to determine what the facts were based on the evidence they heard. The prosecutor then continued, "[Voage] did not tell the officers about Laura Glover. You heard from Officer Schmidt. Had he been told that there was an intent to return the property to Laura Glover and that [Voage] was looking for Laura Glover's phone number, he would have written it down in his report and he did not."

*Voage*, 2012 WL 5914032, at *9.

A prosecutor may not misstate the evidence or refer to facts not in evidence. *Darden*, 477 U.S. at 181-82; *Berger v. United States*, 295 U.S. 78, 84-85 (1935) (holding that prosecutor "overstepped the bounds of . . . propriety and fairness" by "misstating the facts in his

cross-examination of witnesses; . . . putting into the mouths of such witnesses things which they had not said; . . . suggesting by his questions that statements had been made to him personally out of court, in respect of which no proof was offered; . . . [and] assuming prejudicial facts not in evidence"). But again, a habeas petition alleging prosecutorial misconduct will be granted only when the misconduct did "so infect the trial with unfairness as to make the resulting conviction a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)); *see also Darden v. Wainwright*, 477 U.S. 168, 181 (1986). "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

Voage fails to demonstrate fundamental unfairness here. As the Court of Appeal reasonably concluded when rejecting this argument on direct appeal, "here the prosecutor's argument was a fair comment on the evidence. Contrary to [Voage's] contention, the record supports an inference that [Voage] had an opportunity to tell police officers his version of events." *Voage*, 2012 WL 5914032, at *9. The appellate court explained:

> Officer Schmidt asked [Voage] what happened and, according to [Voage], he told Officer Schmidt what occurred and what he saw. [Voage] said he told Officer Schmidt he tried to return Brandt's property to Stuart. [Voage] subsequently testified that police officers did not ask him his side of the story when he was taken to the police station, but [Voage] also admitted that he told police what he did. Because the record supports the inference that [Voage] had an opportunity to tell law enforcement officers what happened, [Voage's] claim of prosecutorial misconduct and judicial error is not established.

*Id.*

The appellate court's analysis is fully supported by the record.[5]  Accordingly, this Court cannot say that the state court's resolution of this claim was unreasonable or that the prosecutor's remarks deprived Voage of a fair trial.  This claim therefore also must fail.

C.     Request for Evidentiary Hearing

Voage further requests an evidentiary hearing on all of his claims (Docket No. 60).  A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293

---

[5]        Notably, a suspect has a constitutional right not to speak to police after he is arrested and given his *Miranda* warnings.  *Miranda v. Arizona*, 384 U.S. 436, 479 (1966).  As a consequence of that right, prosecutors are prohibited from commenting on a defendant's post-*Miranda* silence.  *Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976); *United States v. Lopez*, 500 F.3d 840, 844 (9th Cir. 2007) (prosecutor's comment on defendant's post-*Miranda* silence violates Doyle).  The rationale for this rule "rests on the fundamental unfairness of implicitly assuring a suspect that his silence will not be used against him and then using his silence to impeach an explanation subsequently offered at trial."  *Wainwright v. Greenfield*, 474 U.S. 284, 291 (1986) (citation and internal quotation marks omitted) (holding that prosecution may not use defendant's silence during case-in-chief).  The Supreme Court, however, has declined to extend *Doyle* to situations where, as here, the defendant did not invoke his *Miranda* rights but waived them and gave a post-arrest statement.  *See Anderson v. Charles*, 447 U.S. 404, 408 (1980) (per curiam).

(1963).  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

As discussed above, Voage has failed to assert a colorable claim for relief.  *See Bashor v. Risley*, 730 F.2d 1228, 1233 (9th Cir. 1984) (holding an evidentiary hearing is not required on issues which can be resolved on the basis of the state court record).  Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts with respect to this claim, he has also failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2).  Voage's request for an evidentiary hearing at Docket No. 60 must therefore also be denied.

## V. CONCLUSION AND ORDER

Voage is not entitled to relief on any ground raised in his Petition and is not entitled to an evidentiary hearing.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the request for an evidentiary hearing at Docket No. 60 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: July 12, 2017.

    /s/James K. Singleton, Jr.    
JAMES K. SINGLETON, JR.
Senior United States District Judge
